**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 12 2014, 10:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KAREN M. HEARD**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NITA JOYCE TROTT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1311-CR-496 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Kelli E. Fink, Magistrate
Cause No. 82C01-1301-FD-124

**June 12, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

After fleeing from police and leading officers on a chase through the busy streets of Evansville, Nita Joyce Trott was convicted of Class D felony resisting law enforcement and Class B misdemeanor reckless driving. Trott now appeals, arguing that the evidence is insufficient to support both of her convictions. We find that Trott's actions support a conclusion that she fled from law enforcement by using her car and that throughout the pursuit she drove recklessly and endangered the safety and property of others. We therefore affirm the trial court.

**Facts and Procedural History**

The facts most favorable to the judgment follow. On January 24, 2013, Officer Frank Current of the Evansville Police Department was patrolling the east side of Evansville. At 2:28 p.m. Officer Current overheard a dispatch concerning an irate customer, Trott, "tearing up things at . . . Don's Cleaners." Tr. p. 8, 36. The dispatch gave a description of Trott, her car, and her license-plate number. Officer Current was stopped at a red light in the left-turn lane at the intersection of Boeke and Morgan Avenues near Don's Cleaners when he heard the dispatch. While Officer Current was stopped at the light, a car matching the description drove through the intersection, in the direction he was going to turn. Officer Current decided to pursue Trott, immediately turned on his emergency lights, and continued in the direction she was traveling. Officer Current was directly behind Trott's car; however, despite traveling fifty miles per hour in a thirty-mile-per-hour zone, Officer Current was unable to catch up to Trott's car. A constant gap remained between the two cars. Trott then made a right turn onto St. James Boulevard;

2

Officer Current followed and turned on his siren. *See id.* at 23 (Officer Current testifying that he turned his siren to the "no interruption" setting so that a constant sound was coming from his car).

Once again Trott reached a speed twenty miles per hour over the thirty-mile-per-hour limit. Officer Current accelerated between forty and fifty miles per hour in order to keep up with Trott, who was now speeding down a residential, car-lined street. Officer Current was unable to close the half-block gap between his and Trott's cars until she finally slowed down to make a turn onto Tennessee Street. At this point, Officer Current was a car-length behind Trott's car with his lights and siren on; however, Trott still did not stop. She continued traveling at forty to fifty miles per hour, turned another corner, and did not stop at the stop sign at the intersection of Tennessee Street and Boeke Avenue. *Id.* at 16-17, 42; *see also id.* at 29, 37 (on cross-examination Officer Current characterized the failure to stop as an "aggressive rolling stop"). Trott was then forced to make an abrupt stop at a red light at the very busy intersection of Boeke and Morgan. While Trott was stopped at the light, Officer Marcus Craig, who was responding to Officer Current's call, pulled up to the intersection directly in front of Trott and blocked her car.

The pursuit of Trott lasted about one minute, during which she essentially made a loop, speeding through both commercial and residential car-lined streets, and ended up at the same intersection where Officer Current's pursuit began. Despite the distance between the cars, at no point in time was there another car between Officer Current's and Trott's cars. In addition, the pursuit occurred during a time of high traffic, and three blocks away

3

from where students from the local elementary school were being released for the day. *See id.* at 23 (elementary school located directly across from Don's Cleaner's)

Once Trott's car was forced to stop, Officers Current and Craig approached the driver and passenger sides of her car. Trott rolled her window down as the officers approached. *Id.* at 33; *see also id.* at 43-44 (on recross-examination Officer Current testified that Trott's driver window may have already been down) & *id.* at 54 (on cross-examination Officer Craig testified that both windows were down as they approached). Officer Current attempted to explain the reason for the stop; however, Trott was very angry, shouted obscenities and derogatory comments, and acted disorderly. Officer Current asked Trott, "Why didn't you stop? You had to have seen me behind you. I was the only one behind you. I had my lights on, my siren sounding. Why didn't you stop?" *Id.* at 39. Trott replied that she had done nothing wrong and did not know why the police were behind her or had pulled her over. Officer Current then explained to Trott that she was accused of causing problems at Don's Cleaners and he was trying to get her to stop in order to discuss the incident. When Trott failed to hand over her license and registration, she was asked to exit her car. Officer Current tried to handcuff Trott for resisting law enforcement, but she moved around and made it difficult to place her in handcuffs. Trott was eventually taken to jail.

The State charged Trott with Count I: Class D felony resisting law enforcement (fleeing by car) and Count II: Class B misdemeanor reckless driving. At Trott's bench trial, the trial court found her guilty of both counts. The court sentenced her to eighteen

4

months in the Indiana Department of Correction for Count I and 180 days in the Indiana Department of Correction for Count II, to be served concurrently.

Trott now appeals.

**Discussion and Decision**

Trott raises two issues on appeal. First, Trott contends that the evidence is insufficient to sustain her conviction for Class D felony resisting law enforcement by car. Second, Trott contends that the evidence is insufficient to sustain her conviction for Class B misdemeanor reckless driving. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). We look solely to the evidence most favorable to the judgment with all reasonable inferences to be drawn therefrom. *Id.* A conviction will be affirmed if the probative evidence and reasonable inferences to be drawn from the evidence would have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

**I.      Sufficiency of the Evidence: Resisting Law Enforcement**

Trott first contends that the evidence is insufficient to sustain her conviction for Class D felony resisting law enforcement. In order to convict Trott as charged here, the State had to prove that she (1) knowingly or intentionally; (2) fled from Officers Current and Craig; (3) after the officers, by visible or audible means, identified themselves; and (4) ordered her to stop. Ind. Code § 35-44.1-3-1(a)(3); Appellant's App. p. 15. Visible or audible means includes the operation of the officer's siren or emergency lights. I.C. § 35-

5

44.1-3-1(a)(3). The State also had to prove that Trott used a car to commit the offense in order to convict her of a Class D felony. I.C. § 35-44.1-3-1(b)(1)(A).

Trott argues that there is insufficient evidence to prove that she fled from the officers. Specifically, she claims that "[t]here was simply no evidence presented to show she actually knew that Officer Current was behind her" and that "the first time she saw the officers [was] when they blocked her in at the intersection." Appellant's Br. p. 9, 10. The record shows that immediately after Trott passed through the intersection in front of Officer Current, he turned on his lights and began pursuing her car. She did not stop; instead, she drove fifty miles per hour in a thirty-mile-per-hour residential area. After Trott made a turn and continued driving, Officer Current turned on his siren. Officer Current's use of his lights and siren indicate that Trott knew or had reason to know that the person she was resisting was a police officer. *See State v. Blake*, 468 N.E.2d 548, 550 (Ind. Ct. App. 1984) (finding probable cause to believe that the driver was fleeing when he did not stop in response to officer's lights and sirens, which was chargeable as resisting law enforcement). After Trott turned a second time during the pursuit, Officer Current was able to come within one car-length distance of her. Trott did not stop at a stop sign and continued driving her car until she was forced to abruptly halt at a red light at a very busy intersection. At no point during the pursuit of Trott were there any other cars between Trott's and Officer Current's cars.

This evidence is sufficient to prove that Trott used her car to knowingly or intentionally flee from Officer Current, after he ordered her to stop. *See Woodard v. State*, 770 N.E.2d 897, 901 (Ind. Ct. App. 2002) (affirming resisting-law-enforcement conviction

6

where defendant did not pull over in response to officer's lights and siren because he was "trying to rationalize why [he] would be pulled over," passed multiple restaurants and gas stations before stopping, and chose the location where he wanted to stop), *reh'g denied*, *trans. denied.* "'[F]light' in this context should be understood to mean a knowing attempt to escape law enforcement when the defendant is aware that a law enforcement officer has ordered him to stop or remain in place once there." *Id*. (quotation omitted). Trott's claims regarding sufficiency amount to an invitation to reweigh the evidence, which we may not do. We therefore affirm her resisting-law-enforcement conviction.

## II. Sufficiency of the Evidence: Reckless Driving

Trott also contends that the evidence is insufficient to sustain her conviction for Class B misdemeanor reckless driving. In order to convict Trott as charged here, the State had to prove that she (1) operated a car and (2) recklessly drove at such an unreasonably high rate of speed under the circumstances (3) as to endanger the safety or property of others. Ind. Code § 9-21-8-52(a)(1)(A); Appellant's Br. p. 15.

Trott argues that the State failed to prove both recklessness and endangerment. This Court addressed recklessness in *Taylor v. State*, 457 N.E.2d 594 (Ind. Ct. App. 1983). Although *Taylor* is a reckless-homicide case, the issue on appeal was whether the fact that the defendant drove approximately forty miles per hour above the posted speed limit was reckless. We noted that reckless driving may be based on recklessly driving at such an unreasonably high rate of speed under the circumstances as to endanger the safety or property of others and that proof thereof creates a presumption of recklessness that the defendant may rebut. *Id.* at 598. Therefore, in certain circumstances, operating a car at an

7

"unreasonably high rate of speed" may be sufficient to support a conviction of reckless driving. *Id.* We concluded that although the legislature did not define "unreasonably high rate of speed," "it [was] clear that driving forty miles per hour in excess of the speed limit [was] unreasonable and reckless. The dangerousness of [the defendant's] speeding vehicle was exacerbated by the fact that the pavement was wet and by the fact that he was unfamiliar with the area." *Id.*

Here, the record shows that Trott was driving between forty and fifty miles per hour in a thirty-mile-per-hour zone, and the chase occurred on residential and commercial car-lined streets. In addition, the pursuit occurred during a time of high traffic, and three blocks away from where students from the local elementary school were being released for the day. The evidence is sufficient to prove that Trott acted recklessly. *See Todd v. State*, 566 N.E.2d 67, 70 (Ind. Ct. App. 1991) (affirming reckless-driving conviction where defendant "fished-tailed," turned into a shopping-center parking lot, and sped across the parking lot fifteen miles per hour above the posted speed limit in close proximity to customers), *abrogated on other grounds by Fajardo v. State*, 859 N.E.2d 1201 (Ind. 2007).

As for endangerment, Trott relies on *Jackson v. State*, 576 N.E.2d 607 (Ind. Ct. App. 1991), in support of her argument that she did not endanger the safety or property of others. In *Jackson*, at 1:00 a.m. the defendant skidded in a semi-circle on his motorcycle in the middle of the street and then drove forty-five miles per hour down an alley. He was convicted of Class B misdemeanor reckless driving. On appeal, we reversed the defendant's conviction, finding the record "utterly bereft of any indication, either from direct or circumstantial evidence, that [the defendant] endangered the safety or property of

8

another." *Id.* at 609. We noted that the defendant was driving at 1:00 a.m. and "there [was] no indication that any other motorist or pedestrian was in the vicinity at 1:00 [i]n the morning . . . ." *Id.* at 610.

Here, Officer Current's pursuit of Trott occurred between fifteen and twenty miles per hour over the speed limit, on car-lined streets, and at approximately 2:30 p.m. during a time of high traffic in both residential and commercial areas. Also, Trott failed to stop at a stop sign, and the pursuit occurred three blocks away from the local elementary school when school was dismissing for the day. This evidence is sufficient to prove that under the circumstances, Trott recklessly drove at an unreasonably high rate of speed, and throughout the pursuit she endangered Officer Current and the property and safety of others both on and off the road. We therefore affirm her reckless-driving conviction.

Affirmed.

NAJAM, J., and BROWN, J., concur.