**Charles DAVIS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 58A01–9807–CR–255.

Court of Appeals of Indiana.

July 23, 1999.

Transfer Denied Sept. 27, 1999.

## OPINION

RATLIFF, Senior Judge

### STATEMENT OF THE CASE

Charles Davis appeals his convictions of Aggravated Battery, a class B felony[1]; Criminal Confinement with a Deadly Weapon, a class B felony[2]; Battery Resulting in Serious Bodily Injury, a class C felony[3]; and Criminal Recklessness Resulting in Serious Bodily Injury, a class C felony[4]. We affirm.

### ISSUES

I. Whether Charles was tried and convicted of charges which were never filed against him.

II. Whether it was error to permit the victim who was named in the body of the information but not listed as a witness either on the information or on the State's witness list to testify over objection.

III. Whether the trial court erroneously instructed the jury regarding self-defense, and whether such instructions constitute reversible error.

### FACTS

The facts most favorable to the verdict reveal that Charles and Lena Davis resided in an apartment complex in Rising Sun. On September 29, 1997, after returning to the apartment from meeting with his attorney regarding criminal charges which Lena had filed against him, Charles vented his anger towards Lena and told her he was going to have to do jail time because of her. Both then left the apartment. When Lena returned to the apartment, Charles was already there. He still was very angry and demanded that Lena return her wedding rings. Then, Charles beat Lena severely, striking her on the head and in the face with a .44 magnum handgun. Also, Charles tried to choke her and threw her against the walls and floor, smashed her face into the carpet and dragged her across the floor. Twice

Vicki L. Carmichael, Jeffersonville, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

1. Ind.Code § 35–42–2–1.5

2. Ind.Code § 35–42–3–3(1)

3. Ind.Code § 35–42–2–1(a)(3)

4. Ind Code § 35–42–2–2(c)(1)

Lena tried to escape, but Charles prevented her from leaving. The beating lasted for at least two hours. By this time, it was the early morning hours of September 30th. A downstairs neighbor was awakened by the noise and called the police. When the police arrived about 1:30 a.m., Lena was screaming for help and begging Charles not to kill her. The officers broke into the apartment and observed Charles and Lena struggling over a handgun. The gun discharged, striking Lena in the leg.

Emergency medical personnel were called, and Lena was taken by helicopter to University Hospital in Cincinnati. Lena's face was severely damaged, and her nose was broken requiring surgery. She had significant blood loss, was in hemorrhagic shock, and would have died had she not received prompt medical attention.

Additional facts are stated in our discussion of the issues.

### DISCUSSION AND DECISION

### I. TRIAL AND CONVICTION ON UNFILED CHARGES

Charles contends he was tried and convicted of charges which were never filed against him. The essence of his argument is that the attempted amendment of the information was improper and that the amended information never was filed. We disagree.

In determining this issue, we must consider two separate but related matters. First, was it error for the trial court to permit the State to amend the information in a substantive manner by adding additional charges? Second, was the amended information ever filed against him?

Amendments to indictments or informations are governed by Ind.Code § 35–34–1–5. That part of the statute pertaining to matters of substance is subsection (b) which reads as follows:

> (b) The indictment or information may be amended in matters of substance or form, and the names of material witnesses may be added, by the prosecuting attorney, at any time up to:

> (1) thirty (30) days if the defendant is charged with a felony;

> . . .

> before the omnibus date. . . .

> . . .

> (d) Before amendment of any indictment or information other than amendment as provided in subsection (b) of this section, the court shall give all parties adequate notice of the intended amendment and an opportunity to be heard. Upon permitting such amendment, the court shall, upon motion by the defendant, order any continuance of the proceedings which may be necessary to accord the defendant adequate opportunity to prepare his defense.

Formerly, this statute contained a subsection (e) which provided: "Notwithstanding any other provision in this section, an indictment or information shall not be amended in any respect which changes the theory or theories of the prosecution as originally stated, or changes the identity of the offense charged. . . ." This subsection was repealed effective September 1, 1982.

The original information charging Charles with Battery Resulting in Serious Bodily Injury was filed on October 2, 1997. Initial hearing was held on October 7, 1997, and the omnibus date was set as November 20, 1997. On October 21, 1997, the State filed a motion to amend the information together with a proposed amended information adding the additional counts. On the same date, the trial court granted the State's motion to amend by written order which provided that "said Motion is hereby granted and the State is granted leave to amend the charging Information. . . ." (R. 22). The court's chronological case summary for that date recites: "Motion for leave to amend information and Order granting. Amended Information." (R. 2).

In determining whether or not it was proper to allow the amendment of the information, we must look both to the controlling statute and relevant case law. It seems clear that, if the proper procedures were followed, that Ind.Code § 35–34–1–5(b), subsequent to the 1982 repeal of former subsection (e),

would permit substantive amendments. There is some confusion in case law, however. Some cases cling to the view that no amendment may be allowed which changes the theory of the prosecution or identity of the offense. *See Wright v. State*, 593 N.E.2d 1192, 1197 (Ind.1992), *cert. denied*, 506 U.S. 1001, 113 S.Ct. 605, 121 L.Ed.2d 540; *Hart v. State*, 671 N.E.2d 420, 427 (Ind.Ct.App.1996). However, both *Wright* and *Hart* upheld the amendment of the charges because the substantial rights of the defendant had not been prejudiced. In *Reynolds v. State*, 536 N.E.2d 541, 543–44, (Ind.Ct.App.1989), *trans. denied*, this court, while declaring it error to permit an amendment to change the theory of the prosecution from murder to felony murder, held it was not fundamental because the State could have dismissed and refiled the new charge within the statutory limitation period.

 In a more recent case, this court again stated that an information may not be amended to change the theory of the case or the identity of the offense, but, held the information may be amended at any time to cure a defect if the substantial rights of the defendant are not prejudiced. *Taylor v. State*, 677 N.E.2d 56, 67 (Ind.Ct.App.1997), *trans. denied*. In determining whether the rights of the defendant have been prejudiced, factors to be considered are the availability of defenses, risk of double jeopardy, and the danger of misleading the defendant in preparing for trial. *Id.* In a similar vein, *Wilkinson v. State*, 670 N.E.2d 47, 48 (Ind.Ct.App.1996), *trans. denied*, instructs that the test of whether the State should be allowed to amend is whether the amendment affects the availability of a defense or the applicability of evidence which existed under the original information.

In *State v. Gullion*, 546 N.E.2d 121 (Ind.Ct.App.1989), this court held that the State could amend even after thirty (30) days prior to the omnibus date provided the defendant was given adequate notice and hearing on the amendment, and allowing a continuance, if requested, to allow the defendant to prepare his case. We said that requiring the State to dismiss and refile would exalt form over substance. *Id.* at 123. Thereafter, in *Davis v.*

*State*, 580 N.E.2d 326 (Ind.Ct.App.1991), the amendment was not filed until twenty-nine (29) days before the omnibus date. Nevertheless, relying upon *Gullion*, we upheld the amendment. The court held that the defendant had been provided with an adequate opportunity to be heard, noting that notice of the amended information was sent to him nearly five months before the April 6 trial date and he did not object until April 8th. This court stated: "We do not read *Gullion* to require a trial court to set a hearing in every instance that an information is sought to be amended after thirty days prior to the omnibus date.... Rather, the requirement of an 'opportunity to be heard' is satisfied when the defendant is given adequate time to object and request a hearing after proper notice." *Id.* at 328.

Again, in *Todd v. State*, 566 N.E.2d 67, 69 (Ind.Ct.App.1991), it was held that the trial court may allow an amendment of a substantive character under such terms as would preserve the defendant's rights to reasonable notice and opportunity to be heard and contest the amendment. The amendment in *Todd* changed the theory of the prosecution, but this court found the relevant version of the controlling statute no longer prohibited such a change.

In *Haak v. State*, 695 N.E.2d 944, 951–52 (Ind.1998), the omnibus date was in 1994 and the amendment in 1996. Our supreme court stated that if the amendment was of substance, or prejudicial to the defendant even as to form, it was impermissible under the statute. In footnote seven, the court pointed out the change in the statute, but said decisional law still prohibited changes in the theory of the case. However, the court held that because the defendant did not lose any defenses or evidence which would have been available to him, the amendment was not of substance and did not prejudice his substantial rights. The court stated further:

> If the defense under the original information would be equally available after the amendment is made and the accused's evidence would be equally applicable to the information in one form as in the other, amendment is one of form and not of substance. An amendment is of substance

only if it is essential to the making of a valid charge of the crime.

*Id.* at 951. Our supreme court in *Wright v. State*, 690 N.E.2d 1098, 1104 (Ind.1997), seems to place the burden on the defendant to explain how his substantial rights have been prejudiced by the amendment.

■ Under Ind.Code § 35–34–1–5 as it provided at all times herein, and still provides, and as interpreted by this court, we believe the State could amend the information to add the additional counts. The motion to amend, together with the proposed amendment, was sent to Charles's counsel on October 21, 1997. The trial did not begin until April 23, 1998, more than six months later. Charles's first objection to the amendment came in the form of an objection to the court's preliminary instructions stating the charges of the amended information, which objection was predicated upon the contention that the amended charges had never been filed. The trial judge ruled that the amended information had been filed. Charles did not request a continuance. Under these circumstances, we believe, consistent with *Todd* and *Davis*, amendment of the information was proper.

■ Even if we were to apply the prejudice to substantial rights test, it still was proper to allow the amendment. The additional counts all arose from the same occurrence, and all of the evidence pertaining thereto would have been admissible under the original information. No question of double jeopardy is presented by the amendment. Charles's defenses are the same. In fact, Charles never denied beating Lena, admitting to the police officers that he "beat the shit out of her." (R. 728). His defense to all of the charges was self-defense, that he acted to keep Lena from shooting him, a defense obviously rejected by the jury. Further, Charles has not explained how his substantial rights were prejudiced by the amendment and we fail to see any such prej-

udice. Allowing the amendment was consistent with the applicable statute and case law.

■ Having determined that it was proper to allow the amendment, we next turn to Charles's contention that the amendment was never filed, and, thus he was tried and convicted on charges that were never filed against him. First, we note that the trial court entered a written order granting the amendment on October 21, 1997, and that Charles was provided with a copy of that order. The proposed amendment was attached to the motion to amend which also was provided to Charles. The court's CCS entry reads "Amended information." (R. 2). We believe the granting of the motion to amend, coupled with the CCS entry, is tantamount to a filing of the information, and the omission of the clerk's file stamp on the information does not invalidate the charge.[5]

## II. PERMITTING THE VICTIM TO TESTIFY

The State did not list Lena as a witness on the information or on its witness list provided in response to Charles's discovery request. Clearly, the State should have done so. The question, however, is whether it was reversible error to permit Lena to testify. We hold it was not.

■ While it can constitute reversible error for the State to fail to disclose witnesses where such failure would mislead the defendant, it is not always so. *See Thorne v. State*, 429 N.E.2d 644, 646 (Ind.1981) (witness listed by code name thus preventing defendant from preparing for trial or cross-examination); *Johns v. State*, 251 Ind. 172, 240 N.E.2d 60, 64 (1968) (holding failure to disclose witness in compliance with order led defendant to conclude State only going to call one listed witness, and allowing testimony of undisclosed witness was denial of due process); *Cleary v. State*, 663 N.E.2d 779, 784 (Ind.Ct.App.1996) (may exclude evidence where State engaged in deliberate conduct

---

5. To be sure, it would have been better to have given Charles notice of the filing of the notice to amend and an opportunity to be heard thereon, and after granting the motion to have obtained the clerk's file stamp and to have specifically noted "Amended information filed." However, for the reasons stated in our opinion, we do not believe these deviations to be fatal or to constitute reversible error.

that prevented the defendant from having a fair trial).

In *Fortson v. State*, 269 Ind. 161, 379 N.E.2d 147, 152 (Ind.1978), our supreme court held that where the name of Eddie Lewis twice appeared on the face of the information as a co-defendant, and defendant's attorney had been informed that Lewis might testify in exchange for a plea agreement, defendant was well aware of the identity and potential State's witness. Accordingly, the court held that the defendant could not claim prejudice as a result of the State's failure to list the witness on the information. *Id.*

 One of the purposes of pre-trial discovery is to enhance accuracy and efficiency in the fact-finding process. Ordinarily the remedy for failure to list a witness is a continuance or adjournment to enable the defendant to depose the witness. *Lay v. State*, 428 N.E.2d 779, 781 (Ind.1981). A defendant given an opportunity to depose the surprise witness who declines to do so, cannot claim prejudice when the court allows the witness to testify. *Id.*

 Here, Lena was named as the victim in each count of the amended information. Lena and Charles were the only persons present during the happening of the events that led to the filing of the charges in this case. In her opening statement, the prosecuting attorney made numerous references to matters to which Lena would testify, all without any objection from Charles. In fact, it was after the State's first witness had testified, when Charles's counsel objected to the next State witness, Brian Fields, and then indicated that he would object to any testimony from Lena. At that time, the prosecutor noted that they were heading into a three day recess of the trial and that she would make Lena available for deposition or interview. Charles's counsel did not take advantage of this opportunity. Later, when Lena was called as a witness and the court overruled Charles's objection to her testimony, Charles requested a continuance which the court denied. Although it might have been prudent for the trial court to have granted a brief adjournment or continuance, in view of Charles's failure to avail himself of the three day period to depose or interview Lena, we cannot say the denial of a continuance was error.

Given the facts of this case, it should have been apparent to Charles that Lena would testify. Moreover, Charles has not shown any deliberate conduct upon the part of the State to mislead him, or to prejudice his defense. His argument that his defense was prepared upon the belief she would not be called cannot withstand scrutiny. Under the particular facts and circumstances of this case, we hold that the trial court did not err in permitting Lena to testify.

## III. SELF–DEFENSE INSTRUCTIONS

Charles contends the trial court erroneously instructed the jury on the issue of self-defense. Specifically, he argues that the court did not instruct the jury properly on the State's burden to disprove this defense beyond a reasonable doubt.

 It is true, as Charles contends, that if an erroneous instruction given by the court is such that it infects the entire charge given to such an extent as to mislead the jury, reversal is warranted. *Hill v. State*, 615 N.E.2d 97, 99 (Ind.1993). The determinative issue is whether the error was such as to violate due process. *Carson v. State*, 686 N.E.2d 864, 865 (Ind.Ct.App.1997), *trans. denied.* Further, jury instructions are to be considered as a whole and with reference to each other, and an error in an instruction will not cause reversal unless it is of such a nature as to mislead the jury as to the applicable law. *Markley v. State*, 603 N.E.2d 891, 894 (Ind.Ct.App.1992), *trans. denied.* With these principles in mind, we examine the instructions given by the trial court.

The court's final instruction 22A defined the defense of self-defense, and told the jury that "[t]he State has the burden of disproving this defense beyond a reasonable doubt." (R. 331). The instruction is based upon Indiana Pattern Jury Instruction 10.03, and in substantially the same form was found to be correct in *Davis v. State*, 691 N.E.2d 1285, 1289–90 (Ind.Ct.App.1998).

Charles next contends that the court's final instructions 12, 13, 14, and 15 did not accurately and completely instruct the jury on the State's burden. We disagree.

 In each of these instructions, which outlined the elements that the State had to prove as to each count of the information, the trial judge interlined the words "or failed to disprove the defense of self-defense beyond a reasonable doubt." The paragraph which, as amended by interlineation, except as to instruction 14, read "If the State failed to prove each of these elements beyond a reasonable doubt, or failed to disprove the defense of self-defense beyond a reasonable doubt, you should find the defendant not guilty." However, in instruction 14, the interlineation was inserted in the wrong place so that the written instruction read "If the State did not prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of Battery, a Class A misdemeanor." (R. 322–23). Clearly, this instruction, as written, is erroneous. However, our review is aided by the fact that the trial judge's reading of the instructions to the jury was recorded and transcribed.[6] In fact, the instructions were read to the jury on two occasions. (R. 1167–1214).

Our examination of the instructions as actually orally given to the jury reveals that the trial judge read instruction 14 properly with the interlined amendment in the proper place. Thus, the court did not, as Charles claims, tell the jury that if the State failed to disprove the defense they could find him guilty. In fact, in instruction 22A and in instructions 12, 13, 14, and 15, as read to the jury, the jury was properly instructed as to the State's burden of disproving self-defense.

 Charles further asserts the instructions were in error because the phrase "or failed to disprove the defense beyond a reasonable doubt" was not repeated when the court instructed the jury on proof required to raise the level of the offenses charged. We do not agree.

In our view, the jury was adequately instructed on the defense of self-defense and the State's burden of disproving the defense beyond a reasonable doubt. That the court could have repeated the instruction or that the instructions on that issue might have been worded better does not rise to the level of reversible error. Taken as a whole, the jury was properly instructed and was not misled.

### CONCLUSION

While we do not approve of the departures from proper procedures in this case, and caution both the court and prosecuting attorney to observe such prescribed procedures more carefully in the future, we do not find any reversible error. Therefore, the judgment is affirmed.

MATTINGLY, J., and RILEY, J., concur.

---

**6.** See *Reed v. State,* 702 N.E.2d 685, 688–90 (Ind.1998), commenting on the failure to include a transcript of the trial court's actual oral instructions to the jury.