**William E. PARKS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Appellee.**

**No. 82A01–0007–CR–231.**

Court of Appeals of Indiana.

June 20, 2001.

Barbara Coyle Williams, Olsen, Labhart, White & Hambridge, LLP, Evansville, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

William Parks appeals his convictions for operating a motor vehicle after having his driving privileges forfeited for life, a class C felony, operating a motor vehicle while intoxicated, a class A misdemeanor, and two counts of battery, class A misdemeanors. He raises three issues on appeal, which we restate as:

I.   Whether the trial court properly allowed the State to amend one of the charges against Parks immediately before the trial;

II.  Whether the trial court erred in admitting the Breathalyzer test results into evidence; and

III. Whether the evidence is sufficient to demonstrate that Parks was driving the vehicle.

We affirm.

### Facts and Procedural History

The facts most favorable to the verdict show that, on October 6, 1999, Parks, his wife, and four friends were at a restaurant, participating in a dart-throwing league. Eventually, Parks decided he was ready to leave, but his wife was not ready to leave, so a fight ensued. The Vanderburgh County Sheriff's Department was called and, when Deputy Darren Harmon arrived on the scene, he saw a white station wagon moving in reverse for six to ten feet. Parks was the only person in the vehicle. He was seated on the driver's side and the engine was running. As soon as another deputy arrived, the two deputies ordered Parks out of the car, obtained an identification card from him, and placed him in handcuffs.

The deputies noticed a strong odor of alcoholic beverage on Parks' breath. Upon arriving at the county jail, Deputy John Englebrecht read the implied consent warning to Parks. Parks refused to take the chemical test. Parks was initially charged with operating a vehicle after having been adjudged an habitual traffic of-

fender, a class C felony;[1] operating a vehicle while intoxicated, a class A misdemeanor; and three counts of battery, class A misdemeanors. However, immediately prior to the trial, before the jurors were sworn by the trial court, the State moved to amend the operating as an habitual traffic offender to operating a motor vehicle while privileges are forfeited for life, a class C felony. Parks' counsel made a statement to reflect his understanding that the State intended to file enhanced charges in the event Parks objected to the proposed amendment, and that he felt that such amendment was contrary to statute. However, he stated further that he and Parks "believe that the strength of the case revolves around other issues and, rather than risk the filing of much more serious charges ... Parks would at this time not object to the amendments and would ask to proceed with the trial." R. at 45.

Parks was convicted of operating a motor vehicle while his privileges were forfeited for life, operating a vehicle while intoxicated (OVWI), and two counts of battery. He received an aggregate sentence of six years at the Department of Correction. Parks appeals.

### I. Amended Charge

■ Parks relies upon subsection (b) of the statute governing amendments to charging informations, which allows for an amendment in matters of substance or form at any time up to thirty days before the omnibus date in a felony charge, upon written notice to the defendant. Ind.Code § 35–34–1–5(b) (1998). Parks contends that the trial court's decision to permit the State to amend the charging information immediately prior to trial constitutes "fundamental, reversible" error. We disagree.

■ Generally, a charging information may be amended at any time before, during or after trial as long as the amendment does not prejudice the substantial rights of the defendant. *Rita v. State*, 663 N.E.2d 1201, 1205 (Ind.Ct.App.1996). The trial court may also allow an amendment of substantive character provided the defendant was given reasonable notice and the opportunity to be heard. *Davis v. State*, 714 N.E.2d 717, 721 (Ind.Ct.App. 1999). "The requirement of an 'opportunity to be heard' is satisfied when the defendant is given adequate time to object and request a hearing after proper notice." *Id.* (quoting *Davis v. State*, 580 N.E.2d 326, 328 (Ind.Ct.App.1991)). To preserve this issue for appeal, the defendant must object to the request to amend, and if the objection is overruled, must request a continuance to prepare a new defense strategy. *Haak v. State*, 695 N.E.2d 944, 953 n. 5 (Ind.1998).

Parks' failure to object to the State's proposed amendment along with his request "to proceed with the trial" waived this issue for appeal.

### II. Breathalyzer Test Results

■ Parks asserts that the trial court erred in admitting into evidence the Breathalyzer test results, because the test operator failed to follow the statutory procedure in administering the test. In addition, Parks argues that the State presented no evidence that he was advised of the consequences of his refusal to submit to the test. We find Parks' arguments wholly without merit.

A person who operates a vehicle in Indiana impliedly consents to submit to a chemical test. Ind.Code § 9–30–6–1

---

1. The charge of operating a motor vehicle having been adjudged an habitual traffic offender, Ind.Code § 9–30–10–16 (1998), is a class D felony. However, the charging information erroneously lists the charge as a class C felony. R. at 25.

(1998). A person's refusal to submit to a chemical test is admissible into evidence during a proceeding against that person for operating a vehicle while intoxicated. *Id.* § 9–30–6–3.

The State elicited testimony from the police witnesses that Parks was read the Indiana implied consent warning advising him that refusal to submit to a chemical breath test would result in suspension of his driving privileges. R. at 97, 210. Moreover, Parks also testified that he refused the breath test:

Q. And what happened when you got downtown?

A. Well, they made me empty out my pockets and asked me if I wanted to take a breathalyzer test.

Q. And what did you say?

A. No.

* * *

Q. Were you advised of your rights?

A. I remember them reading a consent thing to me, about if I took the breathalyzer test.

Q. The implied consent?

A. Yes.

R. at 296–97.

The evidence unequivocally demonstrates that Parks was read the Indiana implied consent warning and that he refused the chemical breath test. Therefore, whether the test machine documentation was properly admitted into evidence is irrelevant as it is merely cumulative evidence of a fact already demonstrated. In addition, we find that Parks' argument whether he could be legally aware his driving privileges would be suspended if he refused the breath test, when his privileges had already been forfeited for life (*see* R. at 218–20) goes beyond hairsplitting. Needless to say, we find no error.

### III. Sufficiency of the Evidence

Parks also contends that there is insufficient evidence to support his convictions for operating a vehicle with privileges forfeited for life and OVWI. We disagree.

When reviewing a claim for insufficiency of the evidence, we consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn therefrom. *Davis v. State,* 658 N.E.2d 896, 897 (Ind.1995). We do not reweigh evidence or assess witness credibility. *Id.* The conviction will be affirmed unless we conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

Parks argues specifically that the evidence was insufficient to demonstrate that he was driving a vehicle, an element essential to both operating charges. Parks suggests that the factors set forth in *Hiegel v. State,* 538 N.E.2d 265 (Ind.Ct.App.1989), should be considered in determining whether he "operated or was in actual, physical control" of the station wagon prior to his arrest. Appellant Brief at 18. These factors include: (1) whether or not the person in the vehicle was asleep or awake; (2) whether or not the engine was running; (3) the location of the vehicle and all of the circumstances bearing on how the vehicle arrived at that location; and (4) the intent of the person behind the wheel. *Hiegel,* 538 N.E.2d at 267.

In applying the *Hiegel* factors, we find the evidence sufficient to demonstrate that Parks was driving the vehicle. Parks was awake and the vehicle's engine was running. Deputy Harmon witnessed the station wagon moving in reverse six to ten feet out of a parking space with its backup lights on. R. at 74–5. The fact that the car was moving in reverse with the engine running and Parks in the driver seat would also indicate that he intended to move the car from its location in the parking lot.

Parks' convictions for operating a vehicle while his driving privileges were forfeited for life and OVWI are affirmed.

### Conclusion

In summary, we find that the trial court properly allowed the State to amend the charging information prior to trial. Parks' challenge to the admission of the breathalyzer machine documentation of his refusal to submit to the chemical test is without merit. The evidence is sufficient to support Parks' convictions for operating a vehicle while privileges are forfeited for life and OVWI.

Affirmed.

SHARPNACK, C.J., concurs.

SULLIVAN, J., concurs in result.